# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
CATARINO PEREZ, *on behalf of himself, FLSA Collective Plaintiffs and the Class*,

Case No.: 1:20-CV-01121

                                     Plaintiffs,

       -against-

EONS – GREEK FOOD FOR LIFE LLC, EONS 2 AVE LLC, EONS RESTAURANT HOLDING LLC, EONS FOREVER LLC, EONS MONTVALE LLC, EONS PARAMUS LLC, KIG NYVA EONS LLC, and GEORGE GEORGIADES,

                                     Defendants.
-------------------------------------------------------------------------X

## STIPULATION OF SETTLEMENT AND RELEASE AGREEMENT

      This Stipulation of Settlement and Release Agreement ("Agreement") is entered into by between CATARINO M PEREZ RAMIREZ A/K/A CATARINO PEREZ ("Plaintiff"), and EONS - GREEK FOOD FOR LIFE LLC, EONS 2 AVE LLC, EONS RESTAURANT HOLDING LLC, EONS FOREVER LLC, EONS MONTVALE LLC, EONS PARAMUS LLC, KIG NYVA EONS LLC, and GEORGE GEORGIADES, (collectively referred to herein as "Defendants") (Plaintiff and Defendants may from time to time be referred to herein individually as "Party" or collectively as the "Parties").

## RECITALS AND BACKGROUND

      **WHEREAS,** on February 10, 2020 Plaintiff filed a Complaint in the United States District Court for the Southern District of New York ("SDNY") against Defendants under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") alleging that Defendants failed to pay overtime, failed to pay the spread of hours, failed to provide wage notices, and failed to provide wage statements; Case No.: 20-cv-01121 ("Civil Action");

      **WHEREAS,** Plaintiff and Defendants seek to amicably resolve any and all matters in controversy, disputes, causes of action, claims, contentions, and differences between them with regard to Plaintiff's claims under the FLSA and NYLL related to the Civil Action, and the Parties *bona fide* dispute regarding same;

      **WHEREAS,** Defendants deny and continue to deny all of the allegations made by Plaintiff in the Civil Action, whether under the FLSA, NYLL, or otherwise, and have denied and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Civil Action, or otherwise. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendants have agreed to enter into this

Page 1 of 11

settlement on the terms and conditions set forth in this Agreement to avoid the burden, expense, and uncertainty of continuing the Civil Action;

**WHEREAS,** the purpose of this Agreement is to settle fully and finally all claims Plaintiff has asserted, or could have asserted under the FLSA and/or NYLL against Defendants, including all claims asserted in the Civil Action, in order to avoid the burden, expense and uncertainty of continuing the Civil Action;

**WHEREAS,** Plaintiff, in consultation with his attorneys, Lee Litigation Group, PLLC 148 West 24th Street, 8th Floor, New York, NY 10011, (hereinafter referred to as "Counsel for Plaintiff"), has analyzed and evaluated the merits of the claims made against Defendants and the impact of this Agreement on Plaintiff, and based upon such analysis and evaluation, and recognizing the substantial risks of continued litigation, including the possibility that the FLSA and NYLL claims within the Civil Action, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, Plaintiff is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in his best interest;

**WHEREAS,** Defendants, in consultation with their attorneys, Milber Makris Plousadis & Seiden, LLP, 1000 Woodbury Road, Suite 402, Woodbury, New York 11797, (referred to herein as "Counsel for Defendants"), have analyzed and evaluated the merits of the claims made against them, their defenses, and the impact of this Agreement on them, and based upon such analysis and evaluation, and recognizing the substantial risks of continued litigation, including the possibility that the FLSA and NYLL claims within the Civil Action, if not settled now, might result in an outcome less favorable to them, and Defendants are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in their best interest;

**NOW, THEREFORE,** in consideration for the sums as outlined below, Plaintiff and Defendants have reached a full and final compromise and settlement of any and all matters in controversy, and hereby agree as follows:

1. **NO ADMISSION OF LIABILITY:** The Parties hereto recognize and agree that Defendants do not admit, and expressly deny, any violation of law or any liability to Plaintiff or to anyone else as a result of, or growing out of, the matters set forth in the FLSA and NYLL claims within the Civil Action, including, but not limited to, the Causes of Action in the Complaint filed on February 10, 2020, SDNY Case No.: 20-cv-1121 ("Complaint"), or which could have been raised in a lawsuit, or which otherwise involve Plaintiff's employment relationship with Defendants as governed by the FLSA and NYLL.

2. **RELEASE:** In consideration for the payment called for herein, Plaintiff, CATARINO M. PEREZ RAMIREZ A/K/A CATARINO PEREZ, (sometimes hereinafter referred to as the "Releasor"), does hereby completely, irrevocably and unconditionally release and forever discharge Defendants, and as to each, their members, owners, directors, divisions, affiliate organizations (including Soy Kitchen LLC),present and former officers, directors, trustees, employees, employee benefit plans, the current and former plan administrators and trustees, solely in their official capacity as such, of any pension, welfare or other benefit plan

available to present or former employees and any such plan, and each and every one of them their heirs, executors, administrators, successors and assigns (all of which are hereinafter referred to collectively as the "Releasees") from any and all claims within the Civil Action and/or the Complaint filed therein; which includes claims and allegations for wage and hour violations under federal, state and/or local law, including, but not limited to, the New York State Labor Laws, the New York Wage Theft Prevention Act, the New York Minimum Wage Act, the New York Codes, Rules and Regulations, the New York Miscellaneous Industries Wage Order, and/or the Fair Labor Standards Act, each as amended, as well as any actions, claims, grievances, complaints, debts, controversies, judgments, administrative claims and demands whatsoever that Plaintiff his respective heirs, executors, administrators, successors, and assigns had or now has or may have against Defendants and/or the Releasees from the beginning of time to the date of this Agreement, concerning violations or allegations of unpaid compensation, minimum wages, overtime, commissions, or unpaid wages in any form, whether based on common law, statute, the FLSA, the NYLL, or any other law, regulation, or ordinance governing the payment of wages, or otherwise. This release specifically includes all claims for unpaid overtime, back pay, improper deductions, travel time, spread of hours pay, split-shift pay, accrued benefit time, liquidated damages, attorneys-fees and costs, wage-related penalties (including any civil penalties associated with the alleged failure to comply with NYLL § 195 *et. seq.)* bonuses, expense reimbursements, severance pay, gratuities, tip credits, tip allowances, service charges and retained gratuities related to Plaintiff's employment and/or his association with the Releasees.

    3.    **DISMISSAL OF THE CIVIL ACTION**: Plaintiff further understands and agrees that this Agreement and the promises made by Defendants herein are made conditionally and contingent upon Defendants' receipt of : (i) this Agreement fully executed by Plaintiff; (ii) an Order of the SDNY approving this Agreement; and (iii) an Order of the SDNY dismissing with Prejudice, the Civil Action, Case No.: 20-cv-1121, in its entirety, including any and all claims therein whether for violations of the FLSA, NYLL, or otherwise.

    4.    **PAYMENT**: In consideration for the release contained in **Paragraph 2** and all other promises and agreements made by Plaintiff herein, and in full and final satisfaction of these matters, including dismissal of the Civil Action, the Complaint filed therein, and any other related claims Plaintiff did or reasonably could have made based on such allegations, Defendants agree to pay Plaintiff the sum of **$30,000.00 (Thirty Thousand Dollars and Zero Cents)** ("Settlement Payment"). Defendants shall issue the Settlement Payment to Plaintiff within forty-five (45) days after their receipt of: (i) this Agreement, fully executed by Plaintiff; (ii) a completed, fully-executed IRS Form W-4 for Plaintiff (iii) a completed, fully-executed IRS Form W-9 for Counsel for Plaintiff; and (v) a completed Affidavit of Medicare Non-Eligibility, completed by Plaintiff. Defendants shall make all payments as set forth in the schedule above, regardless of the status of negotiations of this Agreement, or judicial approval. To the extent this Agreement is not yet approved by the Court upon the receipt of any payment, Plaintiff's counsel shall retain such amounts in escrow, to be released upon approval of the Agreement. Should the Settling Parties application for judicial approval be denied, Plaintiff's counsel shall remit the amounts retained in escrow to Defendants. The Settlement Payment shall be made as follows:

    A)    Defendants shall provide **payroll checks**, in the total amount of **$20,000.00 (Twenty Thousand Dollars and Zero Cents)**, made payable to *"Catarino Perez"*,

Page 3 of 11

representative of all claims for alleged wages, overtime, and any and all other wage or employment-related claims, less applicable taxes, withholdings and deductions. In January 2021, one IRS Form W-2 will be provided to Plaintiff in accordance with IRS regulations with regard to this payment.

   B)  Defendants' insurer shall provide **one (1) gross check** in the amount of **$10,000.00 (Ten Thousand Dollars and Zero Cents)** made payable to "*Lee Litigation Group, PLLC*", from which no taxes, withholdings or deductions shall be taken. In January 2021, IRS Forms will be provided in accordance with IRS regulations.

   C)  The Settlement Payment shall be delivered by mailing the checks referenced in this **Paragraph 4** to Counsel for Plaintiff via certified mail, return receipt requested, to the attention of: C.K. Lee, Esq., Lee Litigation Group, PLLC, 148 West 24th Street, 8th Floor, New York, New York 10011.

   D)  Without releasing Defendants from their ultimate obligation to ensure the Settlement Payment is delivered to and received by Plaintiff and Counsel for Plaintiff, Defendants will be considered to have fulfilled their obligations regarding the deadline for issuance of the Settlement Payment as contemplated in this **Paragraph 4** by submitting the checks referenced in this **Paragraph 4** to either the custody and control of a United States Postal Service employee, a United States Postal Service Mailbox, or any other receptacle authorized for receipt of United States Postal Service Mail, on or before deadline for issuance of the Settlement Payment as contemplated by this **Paragraph 4**. The Parties agree that any delay in delivery of the Settlement Payment that is caused by, or may be attributed in whole or in part to any act or omission of the United States Postal Service or other mail carrier, shall toll the deadline for issuance of the Settlement Payment as contemplated within this **Paragraph 4**, and shall not be considered a breach of this agreement on behalf of Defendants and/or the Releasees in any way.

   5.  **NO OTHER PAYMENTS OR BENEFITS DUE AND OWING:** Plaintiff hereby acknowledges and agrees that with regard to his claims for wages and/or overtime against Defendants, whether under the FLSA, NYLL, or otherwise, including, but not limited to, claims for wages and overtime alleged in the Civil Action and/or those alleged in the First or Second Causes of Action in the Complaint, that other than the Settlement Payment as set forth in **Paragraph 4** of this Agreement, no other wage or wage-related payments, including, but not limited to, payments of income, wages, overtime, vacation time, or other benefits of any kind are owed to him by Defendants. Plaintiff acknowledges and agrees that the Settlement Payment being made by Defendants is in excess of any amount Defendants are or may be obligated to provide to Plaintiff, or that would normally be provided to Plaintiff upon the resignation, termination and/or separation of his employment with Defendants or the Releasees, and that it is being provided solely in consideration of Plaintiff's signing this Agreement and the mutual promises, covenants and agreements set forth herein.

   6.  **INCOME TAXATION:** Defendants make no representations or warranties regarding any tax issues relating to the payments provided for in **Paragraph 4** above, and Plaintiff acknowledges that he has not relied upon any advice from Defendants or Defendants' agents, employees, attorneys or representatives, concerning the taxability of the amounts to be paid under this Agreement or otherwise. In the event that taxes are assessed against Plaintiff as a

Page 4 of 11

result of the payment made hereunder, Plaintiff shall be solely responsible for the payment of such taxes, interest and/or penalties as may be assessed against him for federal, state and local income taxes and unemployment taxes and to the extent permitted by law including the FLSA, and hold Defendants including their insurers, harmless for any such liability, interest or penalties related thereto.

    A)     <u>Interpretation of this Agreement by Taxing Authorities</u>: In the event the IRS or any other taxing authority or governmental agency (whether federal, state or local) makes a determination that additional taxes are owed by any party, each party shall be responsible for their share of such taxes and their individual defense of such matter.

    7.     **<u>NO OTHER CLAIMS:</u>** Plaintiff represents that, other than the Civil Action and Complaint filed therein, he has not filed any complaints or charges, either formal or informal, against Defendants and/or the Releasees with any other local, state, or federal agency or court relating to the matters alleged in the Civil Action and/or Complaint filed therein. Plaintiff agrees to withdraw the causes of action asserted in Civil Action and Complaint therein, and not to file any other causes of action against Defendants arising from any claims that were raised or could have been brought against Defendants from the beginning of the world up to the date of this Agreement for overtime, commissions, unpaid wages, or any other payments or remunerations for services related to or arising out of Plaintiff's employment relationship with Defendants and/or the Releasees, whether based on common law or otherwise, which specifically includes all claims for unpaid overtime, back pay, improper deductions, travel time, spread of hours pay, split-shift pay, accrued benefit time, liquidated damages, attorneys-fees and costs, wage-related penalties (including any civil penalties associated with the alleged failure to comply with NYLL § 195 *et. seq.*), bonuses, expense reimbursements, severance pay, gratuities, tip credits, tip allowances, service charges and retained gratuities during Plaintiff's employment with Defendants and/or the Releasees. The Parties acknowledge that this Agreement does not limit any Party's right, where applicable, to file or participate in an investigative proceeding of any federal, state or local governmental agency. However, to the extent permitted by law, Plaintiff agrees that if any such claim is made, Plaintiff shall not be entitled to recover any individual monetary relief or other individual remedies.

    8.     **<u>NO ASSIGNMENT OF BENEFITS</u>:** Plaintiff acknowledges that he has not previously transferred, assigned or conveyed any right or claim released in this Agreement.

    9.     **<u>MEDICARE RELEASE BY PLAINTIFF.</u>**

The Parties intend to comply with the Medicare Secondary Payer Act (42 U.S.C. §1395y) and to protect Medicare's interests, if any, in this settlement. Plaintiff understands and agrees that as used herein, the term "Medicare" includes Medicare Part A (Hospital Insurance), Medicare Part B (Medical Insurance), Medicare Part C (Medicare Advantage Organizations) and Medicare Part D (Prescription Drug Insurance). Plaintiff has not been identified as Medicare recipient and the Plaintiff hereby expressly represents and warrants that Medicare has not made any payments to or on the Plaintiff's behalf as a result of or in any way related to the claims alleged in the Lawsuit.

Plaintiff acknowledges, however, that if Plaintiff received benefits that have or may have been paid by an insuring entity affording benefits payable for medical care and/or treatment, as further consideration and inducement for this settlement, Plaintiff agrees to defend and hold harmless Releasees from any and all liens, rights of subrogation, contribution claims, defense claims, losses, liability, actions, damages, causes of action, judgments, costs and expenses, including attorneys' fees, whatsoever made by or sustained by or arising from any person, corporation, partnership, state or federal government, governmental agency, hospital, or any other medical provider, health care provider, disability or insurance benefits providers, workers compensation carrier, Medicare, Medicaid, or any other entity arising in whole or in part out of the care and treatment, or in any way connected to the care and treatment, provided to the Plaintiff for the claims alleged in the Civil Action.

In addition to the Release and Discharge set forth above and in consideration of the payments set forth in this Agreement, Plaintiff hereby waives any cause of action and/or Private Cause of Action under 42 US Code §1395y (b)(3)(A), and releases and forever discharges Releasees from any obligations, from any claim, known or unknown, arising out of the failure of Releasees to provide for a primary payment or appropriate reimbursement pursuant to 42 US Code §1395y (b)(3)A).

Plaintiff agrees to defend and hold harmless Releasees for any claim, loss or payment Releasees may suffer, including judgments, verdicts, awards, penalties, attorney's fees and costs, that arises out of the failure to pay any unpaid medical bills or future medical expenses, or to otherwise fail to protect Medicare's interests under the MSP Act which exceed the amounts set forth in the final letters issued by these agencies. Plaintiff agrees by this Agreement to waive any claims for damages, indemnification and/or contribution from any causes of action of any kind or nature, including but not limited to a private cause of action provided in the Medicare Secondary Payer (MSP) Act, 42 U.S.C. Section 1395y(b)(3)(A), in connection with or arising as a result of the medical care and treatment rendered to Plaintiff regarding the claims alleged in the Civil Action.

It is understood and agreed that Plaintiff will provide Releasees all of the information noted below and all information required for Releasees to properly report this claim to Medicare pursuant to 42 U.S.C. 1395y(b)(8). Plaintiff further agrees that Releasees will provide the information below and all information required under 42 U.S.C. 1395y(b)(8) to The Centers for Medicare and Medicaid Services pursuant to The Medicare, Medicaid and SCHIP Extension Act of 2007.

    i. Full Name as it appears on your Social Security Card
   ii. Social Security Number
  iii. Address
   iv. Date of Birth
    v. Gender
   vi. Medicare Health Insurance Claim Number (HICN)

Page **6** of **11**

A) Plaintiff, Catarino Perez, further declares under penalty of perjury under the laws of the State of New York, that: 1) I am not currently entitled to Medicare; and 2) I have received no treatment for any claims related to the Civil Action that was submitted to or paid for by Medicare or Medicaid.

10. **NONDISPARAGEMENT:** The Parties further agree that neither they nor anyone under their control or at their direction will take, support, encourage, induce or voluntarily participate in any action or attempted action that would negatively comment on, disparage or call into question the business operations, policies or conduct of the other Party, or to act in any way with respect to such business operations, policies or conduct that would likely damage any of the Parties' reputations, business relationships, or present or future business. For the purposes of this Agreement, the term "disparage" includes and is not limited to comments or statements on social media, to the press and/or media, as well as to persons and entities with whom the other Party has a business or charitable relationship, which would adversely affect the Party. However, nothing in this Section shall be construed to prohibit the Parties from making truthful statements concerning their experiences litigating the Civil Action.

11. **GOVERNING LAW:** The rights and obligations of the Parties hereunder shall be construed and enforced in accordance with, and shall be governed by, the laws of the State of New York, without regard to principles of conflict of laws. The Court in the Civil Action shall retain jurisdiction to enforce this agreement.

12. **ENTIRE AGREEMENT:** The Parties acknowledge that, in making this Agreement, they relied entirely upon their own judgment, belief, interests, and the advice of their counsel. The Parties acknowledge that, except as expressly set forth herein, no representations or promises of any kind or character have been made by any Party or Parties, their agents, representatives, or attorneys, to induce the execution of this Agreement. This Agreement constitutes a single integrated contract expressing the entire agreement between the Parties hereto. There is no other agreement or understanding, written or oral, expressed or implied, between or among the Parties hereto concerning the subject matter hereof, except the representations, promises, covenants, and agreements set forth herein. This Agreement supersedes, cancels, and replaces any and all prior and/or contemporaneous negotiations and all agreements, arrangements or representations proposed or otherwise, written or oral, concerning the subject matter hereof.

13. **IMPORTANT ACKNOWLEDGEMENTS:** By signing this agreement:

A) The Parties affirm they have read this Agreement in its entirety;

B) The Parties understand the terms of this Agreement, and know that by executing it they are giving up important rights;

C) The Parties affirm that they are competent to enter into this Agreement and are not affected or impaired by illness, use of alcohol, drugs, medication or other substances or otherwise impaired.

D) The Parties have been advised to consult with their attorneys prior to executing this Agreement, and represent and warrant that they have done so, or that they otherwise knowingly and voluntarily waive such right;

E) The Parties have signed this Agreement knowingly and voluntarily;

F) The Parties represent and warrant that they believe the attorneys' fees portion of the Settlement Payment to be fair and reasonable.

14. **BINDING NATURE OF AGREEMENT:** This Agreement is binding upon and shall inure to the benefit of the Parties and their respective heirs, executors, administrators, executors, successors, assigns and legal representatives. It is expressly recognized that each of the Releasees is a beneficiary of this Agreement.

15. **ARMS' LENGTH TRANSACTION; MATERIALITY OF TERMS:** The parties have negotiated all the terms and conditions of this Agreement at arm's length. All terms and conditions of this Agreement in the exact form set forth in this agreement are material to this agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

16. **NO CONSTRUCTION AGAINST DRAFTER:** This Agreement is the product of negotiation among Plaintiff and Defendants and/or their respective counsel and shall be deemed as having been prepared jointly by them. In interpreting the text of this Agreement, no presumption against the drafter of any provision shall be made.

17. **EFFECTIVE DATE:** This Agreement shall become effective upon receipt of payment by Counsel for Plaintiff.

18. **SEVERABILITY:** If any provision, subpart of any provision, phrase or clause herein is determined by a court of competent jurisdiction to be invalid or unenforceable (other than **Paragraph 2**, "**Release**", as to which all monies paid hereunder must be returned to Defendants if found to be invalid or unenforceable), those provisions, subparts, phrases or clauses shall be considered duly severable and removed from the agreement, such that the remaining provisions subparts, phrases and clauses shall continue in full force and effect.

19. **WAIVER:** No breach of any terms or provisions hereto will be deemed waived unless in writing. The waiver of any breach of any terms or provisions of this Agreement shall not be a waiver of any other breach of this Agreement.

20. **HEADINGS:** The headings or titles of the paragraphs contained herein are for guidance purposes only and have no force or effect, nor do they in any way alter the terms or meaning of this Agreement.

21. **NO MODIFICATION EXCEPT IN WRITING:** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extend set forth in such written waiver, modification, or amendment, subject to any required Court approval. Any failures by any Party to insist upon the

Page **8** of **11**

strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

      22.    **MULTIPLE COUNTERPARTS:** The Parties agree that this Agreement can be signed in counterparts that all such counterparts, together, shall constitute one and the same legal instrument.

      23.    **EMAIL & FACSIMILE SIGNATURES:** The Parties further agree that photocopied, scanned, emailed, or facsimile signatures shall be deemed as effective as original signatures.

      **[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK.]**

*Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.*

THE UNDERSIGNED HAS READ THE FOREGOING RELEASE AND FULLY UNDERSTANDS IT.

**IN WITNESS WHEREOF**, the Parties hereto have executed, or caused their duly authorized officer to execute, this Agreement as of the day and year first written below.

_____
CATARINO PEREZ


EONS – GREEK FOOD FOR LIFE LLC


By:_____
    Name:
    Title:


EONS 2 AVE LLC


By:_____
    Name:
    Title:


EONS RESTAURANT HOLDING LLC


By:_____
    Name:
    Title:

Page **10** of **11**

EONS FOREVER LLC

By:_____
    Name:
    Title:

EONS MONTVALE LLC

By:_____
    Name:
    Title:

EONS PARAMUS LLC

By:_____
    Name:
    Title:

KIG NYVA EONS LLC

By:_____
    Name:
    Title:

_____
GEORGE GEORGIADES

**[THIS IS THE END OF THE DOCUMENT.]**